IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| YEFRI GABRIEL HERNANDEZ MEMBRENO, | § § § | |
| Petitioner, | § § | |
| v. | § § | 1:26-CV-496-RP |
| MIGUEL VERGARA, *Field Office Director San Antonio Field Office, Immigration and Customs Enforcement*, et al., | § § § § § | |
| Respondents. | § § | |

**<u>ORDER</u>**

Before the Court is Petitioner Yefri Gabriel Hernandez Membreno's ("Petitioner") Petition for Writ of Habeas Corpus, (Dkt. 1); Federal Respondents' Response to the Petitioner's Petition for a Writ of Habeas Corpus, (Dkt. 5); Petitioner's Emergency Request for the Court to Rule Against Respondents' Ultra Vires Action of the Petitioner's Unlawful Removal, (Dkt. 9); and Federal Respondents' Response to Emergency Request, (Dkt. 12). Having considered the parties' arguments, the evidence presented, and the relevant law, the Court will deny Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), and Petitioner's Emergency Request for the Court to Rule Against Respondents' Ultra Vires Action of the Petitioner's Unlawful Removal, (Dkt. 9).

**I. BACKGROUND**

Petitioner filed his Petition for Writ of Habeas Corpus on Friday, February 27, 2026. (Dkt. 1). The case was assigned to this Court on March 5, 2026. On that date, the Court entered an Order to Show Cause, which ordered Respondents[1] to respond to Petitioner's Petition and included an

---

[1] Respondents in this case are Respondents Miguel Vergara, Field Office Director for Detention and Removal, U.S. Immigration and Customs Enforcement ("ICE"); Charlotte Collins, Warden, T. Don Hutto Detention Center; Todd M. Lyons, Director of United States ICE; Kristi Noem, Secretary of the United

order barring Respondents from removing or deporting Petitioner form the United States. (Order to Show Cause, Dkt. 4, at 3–4).

In their Response filed on March 9, 2026, Respondents notified the Court that "Petitioner was released from ICE custody and voluntarily departed the United States on February 28, 2026." (Resp., Dkt. 5, at 1). Petitioner subsequently filed an Emergency Request, claiming that Petitioner "did not validly sign his Voluntary Departure Papers," "did not want to return to Honduras," "was refused Counsel," was told that if "did not cooperate" "he would be given 8 months in Federal detention," and "was removed in violation of the law." (Emerg. Req., Dkt. 9, at 2, 10). Petitioner further claims that "Respondents interfered with [the Court's] jurisdiction," such that the Court continues to have jurisdiction and may order him sent back to the United States. (*Id.* at 3–4, 12). He emphasizes that he did not have a final order of removal. (*Id.* at 3).

Respondents argue in response that the relief sought by Petitioner in his Emergency Request is outside of the scope of habeas, as habeas petitions are meant to seek forward-looking remedies rather than backwards-looking remedies. (Resp. to Emerg. Req., Dkt. 12, at 2). They additionally assert that the expedited nature of habeas petitions makes them an unfit vehicle for "complex claims involving heavy discovery." (*Id.* at 3). Finally, Respondents claim that voluntary departure is legally distinct from removal, such that his departure was proper despite him having no final order of removal. (*Id.* at 5).

Petitioner argues in reply that, contrary to Respondents' contentions, "Petitioner did not make a knowing, voluntary, signature on his voluntary departure paperwork." (Reply, Dkt. 14, at 2–3). He again alleges that he was told the form was "medical paperwork" and that he was "threatened

---

States Department of Homeland Security; and Pamela Bondi, United States Attorney General. The responses in this case, (Dkts. 5, 12), are solely filed on behalf of the federal employees (together, "Respondents").

with 8 months [of] federal detention." (*Id.* at 3). Petitioner asserts that the Court continues to have jurisdiction because he had already filed a habeas petition when he was removed. (*Id.*).

## II. DISCUSSION

"Habeas is at its core a remedy for unlawful executive detention. . . . The typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004)). For a court to have jurisdiction over a habeas petition, the petitioner must have been "in custody" at the time the petition was filed. *Spencer v. Kenna*, 523 U.S. 1, 7 (1998). Even if the "in custody" requirement is met, however, a petitioner must also continue to "present[] a case or controversy under Article III, § 2 of the Constitution" and therefore must continue to have an injury "likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).

In the criminal context, the Supreme Court has held that a habeas petition is not moot if the petitioner continues to suffer "collateral consequences" as a result of their conviction. *Id.* Courts have applied this "collateral consequences" doctrine to immigration habeas cases where the alleged collateral consequence could "be redressed by success on the petition." *See, e.g.*, *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007) (holding that a petitioner's claims were moot where "successful resolution of [his] pending claims could no longer provide the requested relief" after he was deported); *Kurtishi v. Cicchi*, 270 F. App'x 197, 199–200 (3d Cir. 2008) (per curiam) ("In view of [the petitioner's] deportation, there are no remaining collateral consequences that may be redressed by success on [his] challenge under § 2241 to his 'continued restraint by DHS–ICE.'"); *Valle Vargas v. De Anda-Ybara*, No. CV 25-834 JB/GBW, 2026 WL 63932, at *4 (D.N.M. Jan. 8, 2026), *report and recommendation adopted sub nom. Valle Vargas v. De Anda-Ybarra*, No. CIV 25-0834 JB/GBW, 2026 WL 256810 (D.N.M. Jan. 30, 2026) (mooting a habeas petition where the alleged "collateral consequences" were "consequences of his removal," rather than "consequences of his detention");

3

In the instant case, Petitioner does meet the "in custody" requirement, as he was detained at the time his petition was filed. *See Spencer*, 523 U.S. at 7. But the Court finds that, like the petitioners described above, Petitioner has failed to show how the relief sought in his habeas petition— immediate release or an individualized bond hearing—could redress any ongoing injury. (*See* Pet., Dkt. 1, at 7) (requesting relief in the form of a release order or order for an individualized bond hearing). He does not sufficiently allege any "collateral consequences" from his *detention* that are ongoing. Even if Petitioner's removal to Honduras was coerced and therefore unlawful,[2] that injury was caused by the actions of federal officers—not by his detention itself. *See Valle Vargas*, 2026 WL 63932, at *4.

Petitioner does argue that his removal "unfortunately subjects him improperly to many bars," such as the inability to return to the United States. This argument is ultimately unpersuasive. For one, such a bar does not apply to individuals who left through a voluntary departure program rather than by a final order of removal.[3] And, regardless, an inability to return to the United States would be a consequence of immigration law violations, rather than a direct consequence of his detention.

Nor does Petitioner's argument that he was unlawfully removed in violation of a court order succeed. The Court's Order to Show Cause, (Dkt. 4), was not entered until after Petitioner had been taken to Honduras. The Court acknowledges case law providing that a court may require a petitioner

---

[2] *See Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620 (9th Cir. 2006) ("Given the consequences of an agreement to accept voluntary departure, such an agreement, like a plea agreement, should be enforced against an alien only when the alien has been informed of, and has knowingly and voluntarily consented to, the terms of the agreement.").

[3] "An alien who departs this country under a formal deportation order is excludable from the country for five years, 8 U.S.C. § 1182, and commits a felony if he or she returns without permission. . . . A grant of voluntary departure, on the other hand, is a form of discretionary relief which allows a deportable alien to leave the United States without suffering these consequences. . . . In other words, an alien who voluntarily departs the United States may apply for immediate re-entry." *United States v. Munoz-Valencia*, 59 F. App'x 483, 486 (3d Cir. 2003) (per curiam) (citations omitted).

be brought back to the United States where the removal was in violation of a court order, but this is not such a case. *See, e.g.*, *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (denying stay of district court order to facilitate return of non-citizen wrongfully removed in violation of a court order forbidding his removal).

In short, because there is no live controversy properly before the Court, Petitioner's Petition for a Writ of Habeas Corpus is moot. If Petitioner wishes to seek relief for his allegedly unlawful removal from the United States, a habeas petition is not the vehicle to do so. He must explore other options. *See, e.g.*, *Aguilar-Quintanilla v. Noem*, No. 5:26-CV-596-JKP (W.D. Tex. Feb. 4, 2026) (filing a civil mandamus action for a former ICE detainee seeking to be returned to the United States); *Lopez-Flores v. Ibarra*, No. 1:17-CV-00105, 2018 WL 6579180 (S.D. Tex. Jan. 22, 2018) (pleading violations of the Fourth and Fifth Amendment related to an alleged involuntary signing of a voluntary departure form).

Accordingly, **IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), and Petitioner's Emergency Request for the Court to Rule Against Respondents' Ultra Vires Action of the Petitioner's Unlawful Removal, (Dkt. 9), are **DENIED** as **MOOT**.

**SIGNED** on April 14, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE